# EXHIBIT 1

# EXHIBIT 1

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY
                                     CIVIL DIVISION

FILED
07-27-2017
John Barrett
Clerk of Circuit Court
2017CV006201
Honorable Glenn H
Yamahiro-34
Branch 34

RUSSELL SCHUMEL, ALEX JAMES
KOWALSKI and HOLLY KAY KOWALSKI,
Individually And On Behalf Of All Others
Similarly Situated,

                Plaintiffs,

             v.

BANK MUTUAL CORPORATION, MICHAEL
T. CROWLEY, JR., DAVID A.
BAUMGARTEN, RICHARD A. BROWN,
MARK C. HERR, MIKE I. SHAFIR, DAVID C.
BOERKE, LISA A. MAUER, ROBERT B.
OLSON, THOMAS H. BUESTRIN, WILLIAM
J. MIELKE and ASSOCIATED BANC-CORP,

                Defendants.

Civil Case No.

Case Code: 30106

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Russell Schumel, Alex James Kowalski and Holly Kay Kowalski, ("Plaintiffs"), by and

through their attorneys, allege upon information and belief, except to paragraphs 12-14 which are

alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring the action individually, and on behalf of the holders of the

common stock of Bank Mutual ("Bank Mutual" or the "Company"), against the directors of

Bank Mutual, and other persons and entities (collectively, "Defendants") involved in a proposed

transaction in which Associated Banc-Corp ("Associated") will acquire all of the outstanding

stock of Bank Mutual for inadequate consideration (the "Proposed Transaction").

2.      On July 20, 2017, Bank Mutual and Associated issued a joint press release announcing that they had entered into a definitive Agreement and Plan of Merger ("Merger Agreement") pursuant to which Associated would acquire Bank Mutual in a transaction valued at approximately $482 million in the aggregate.

3.      Pursuant to the Merger Agreement, Bank Mutual with and into Associated (the "Merger"), with Associated as the surviving corporation.

4.      Under the terms of the merger agreement, which has been unanimously approved by the board of directors of Bank Mutual, Bank Mutual shareholders will receive 0.422 shares of Associated common stock for each share of Bank Mutual common stock. The per common share consideration is valued at $10.38 per share based on the closing price of Associated common stock on July 19, 2017.

5.      Like many financial institutions, Bank Mutual has been making steady progress to recovering from the financial crisis of 2008, before which its stock was trading at more than $12 per share.  By the start of 2013, Bank Mutual had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bank Mutual has confirmed in its most recent financial results, it is well on its way to a continuation of the positive direction of Bank Mutual's core profitability. Moreover, as the third largest financial institution holding company headquartered in the state of Wisconsin, Bank Mutual has coveted geographic concentration in the Southeast Wisconsin markets centered on the Milwaukee and Racine metropolitan areas.  In many ways, Bank Mutual is poised for strong growth and its solid balance sheet gives Bank Mutual an opportunity for further internal expansion and the exploration of

acquisition opportunities. Indeed, during 2014, Mutual was considering acquisitions to diversify its services and further expand, but for whatever reasons these plans were never executed.

6. Thus, the consideration being offered to Bank Mutual public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bank Mutual common stock is materially in excess of the amount offered given the Company's recent financial performance together with its prospects for future growth and earnings.

7. To ensure the success of the proposed transaction, Bank Mutual Board of Directors (the "Board") locked up the deal by agreeing to impermissible "deal-protection" devices, effectively rendering the Proposed Transaction a *fait accompli*. For example, the Board agreed to: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Associated three (3) business days to match any competing proposal in the unlikely event that one emerges; and (iii) a $17 million termination fee to be paid to Associated if the Board agrees to a competing proposal.

8. In pursuing the unlawful plan to facilitate the acquisition of Bank Mutual by Associated for grossly inadequate consideration, through a flawed process, each of the Defendants (defined below) violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

9. For these reasons and as set forth in detail herein, Plaintiffs seek to enjoin Defendants from taking any steps to consummate the Merger or, in the event the Merger is

3

consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith and due care.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in Wisconsin, or is an individual who is a director of a corporation incorporated in Wisconsin and otherwise has sufficient minimum contacts with Wisconsin so as to render the exercise of jurisdiction by the Wisconsin courts permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this Court because one or more of the defendants is incorporated in this County, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) breaches of their fiduciary duties owed to Bank Mutual stockholders, occurred in this County, and defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

**THE PARTIES**

12. Plaintiff Russell Schumel is and has been at all times relevant hereto a stockholder of Bank Mutual.

13. Plaintiff Alex James Kowalski is and has been at all times relevant hereto a stockholder of Bank Mutual.

14. Plaintiff Holly Kay Kowalski is and has been at all times relevant hereto a stockholder of Bank Mutual.

15. Defendant Bank Mutual is a Wisconsin corporation headquartered 4949 West Brown Deer Road, Milwaukee, Wisconsin. Bank Mutual is $2.688 billion asset bank holding

4

company. Its primary subsidiary is Bank Mutual, a federally-chartered savings bank headquartered in Milwaukee, Wisconsin. Bank Mutual has 58 banking offices in Wisconsin and one in Minnesota. The largest concentration of the Company's offices is in southeastern Wisconsin, consisting of the Milwaukee metropolitan area and Racine and Kenosha Counties. Bank Mutual's stock is traded on the NASDAQ under the symbol "BKMU."

16.     Defendant Michael T. Crowley, Jr. ("Crowley") has served as a director of the Company since 1970 and is Chairman of Bank Mutual's Board. Crowley also serves as Chairman of Bank Mutual's Executive Committee. Crowley retired as Chief Executive Officer of Bank Mutual in 2013. Through affiliates and directly, Crowley owns approximately 4.4% of Bank Mutual's outstanding stock.

17.     Defendant David A. Baumgarten ("Baumgarten") has served as a director of the Company since 2010. Baumgarten succeeded Crowley as Chief Executive Officer of Mutual Bank in 2013. Before 2010, Baumgarten served as an Executive Vice President–Regional Banking for defendant Associated.

18.     Defendant Richard A. Brown ("Brown") has served as a director of Bank Mutual since 2007. Brown is a member of Bank Mutual's Nominating and Governance Committee. Brown is also Chairman of Bank Mutual's Audit Committee.

19.     Defendant Mark C. Herr ("Herr") has served as a director of Bank Mutual since 2001. Herr is a member of Bank Mutual's Nominating and Governance Committee.

20.     Defendant Mike I. Shafir ("Shafir") has served as a director of Bank Mutual since 2016.

21.     Defendant David C. Boerke ("Boerke") has served as a director of Bank Mutual since 2007. Boerke is a member of Bank Mutual's Compensation Committee.

22.	Defendant Lisa A. Mauer ("Mauer") has served as a director of Bank Mutual since May 2014.  Mauer is a member of Bank Mutual's Audit Committee.

23.	Defendant Robert B. Olson ("Olson") has served as a director of Bank Mutual since 2000.  Olson is a member of Bank Mutual's Audit Committee.  Olson is also a member of Bank Mutual's Compensation Committee.  Olson is also a member of Bank Mutual's Executive Committee.

24.	Defendant Thomas H. Buestrin ("Buestrin") has served as a director of Bank Mutual since 1995.  Buestrin is a member of Bank Mutual's Nominating and Governance Committee.  Buestrin is also a member of Bank Mutual's Compensation Committee.  Buestrin is also a member of Bank Mutual's Executive Committee.

25.	Defendant William J. Mielke ("Mielke") has served as a director of Bank Mutual since 2005.  Mielke is a Chairman of Bank Mutual's Nominating and Governance Committee.  Mielke is also chairman of Bank Mutual's Compensation Committee.  Mielke is also a member of Bank Mutual's Audit Committee.  Mielke is also a member of Bank Mutual's Executive Committee.

26.	Defendants Crowley, Baumgarten, Brown, Herr, Shafir, Boerke, Mauer, Olson, Buestrin and Mielke are collectively referred to as the "Individual Defendants."

27.	Defendant Associated, a Wisconsin corporation, is holding company for Associated Bank, with nearly $20 billion in assets and 200 banking locations throughout Wisconsin, Illinois and Minnesota, and commercial financial services in Indiana, Michigan, Missouri, Ohio and Texas

28.	Defendants Bank Mutual, Associated and the Individual Defendants are collectively referred to as "Defendants."

6

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiffs and the other shareholders of Bank Mutual and owe Plaintiffs and the other members of the Class (defined herein) the duties of good faith, fair dealing and loyalty.

30.     By virtue of their positions as directors and/or officers of Bank Mutual, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Bank Mutual to engage in the practices complained of herein.

31.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

7

(d)    will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

32.    Plaintiffs allege herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiffs and the other shareholders of Bank Mutual, including their duties of loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiffs or the other shareholders of Bank Mutual common stock.

## CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action pursuant to Wis. Stat. § 803.08, on behalf of all holders of Bank Mutual common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

34.    This action is properly maintainable as a class action because:

(a)    The Class is so numerous that joinder of all members is impracticable. According to Bank Mutual's most recent quarterly report on Form 10-Q, there are approximately 45,887,719 shares of Bank Mutual common stock outstanding.  The actual number of public shareholders of Bank Mutual will be ascertained through discovery;

(b)    There are questions of law and fact which are common to the Class, including *inter alia,*the following:

i.    whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect

to plaintiff and the other members of the Class in connection with the Proposed Transaction;

    ii.    whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiffs and the other members of the Class in connection with the Proposed Transaction; and

    iii.    whether Plaintiffs and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

(c)    Each Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)    Each Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiffs do not have any interests adverse to the Class;

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

9

## SUBSTANTIVE ALLEGATIONS

### A.  Background

35.     The Company is $2.7 billion asset bank holding company. Its primary subsidiary is Bank Mutual, a federally-chartered savings bank headquartered in Milwaukee, Wisconsin. Bank Mutual has 58 banking offices in Wisconsin and one in Minnesota. The largest concentration of the Company's offices is in southeastern Wisconsin, consisting of the Milwaukee metropolitan area and Racine and Kenosha Counties.

36.     Like many financial institutions, Bank Mutual has been making steady progress to recovering from the financial crisis of 2008, before which its stock was trading at more than $12 per share.  By the start of 2013, Bank Mutual had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bank Mutual has confirmed in its most recent financial results , it is well on its way to a showing  a continuation of the positive direction of Bank Mutual's core profitability.  Moreover, as the third largest financial institution holding company headquartered in the state of Wisconsin, Bank Mutual has coveted geographic concentration in the Southeast Wisconsin markets centered on the Milwaukee and Racine metropolitan areas.  In many ways, Bank Mutual is poised for strong growth and its solid balance sheet gives Bank Mutual an opportunity for further internal expansion and the exploration of acquisition opportunities.

37.     In a January 13, 2013 press release announcing fourth quarter and year-end earnings, defendants Crowley and Baumgarten struck a very positive note about Bank Mutual's progress and future prospects.

> Michael T. Crowley, Jr., Chairman and Chief Executive Officer of Bank Mutual noted, "Our quarterly earnings continued to improve as we have stayed on course with strategies to enhance our earning asset mix and our funding mix." Mr. Crowley added, "Confidence

in our recent earnings trend enabled us to increase our dividend to shareholders to two cents per share during the fourth quarter." David A. Baumgarten, President of Bank Mutual, also commented, "With asset quality concerns continuing to diminish, our attention will be even more focused on the strategies necessary to increase our revenue and control our expenses."

38.     Bank Mutual's prospects continued to improve and by the start of 2014, Bank Mutual's was poised for further expansion.  In January 14, 2014 press release announcing fourth quarter and year-end earnings, defendant Baumgarten state as follows:

David A. Baumgarten, President and Chief Executive Officer of Bank Mutual, commented, "Efforts to restructure our balance sheet the past few years have clearly paid offin 2014, resulting in our highest net interest margin as a public company, as well as a fourth-straight year of higher earnings."  Baumgarten added, "However, this period of restructuring is drawing to a close and we expect our net interest margin to be slightly lower in 2015.  We also expect our non-interest expenses to be higher in 2015." He continued, "We are confident, though, that growth in our loan portfolio, which has averaged 7.3% annually the past three years, can continue to fuel an improvement in earnings in 2015, as will modest improvements in our non-interest sources of revenue."

39.     On the same day as the announcement of the Proposed Transaction, July 20, 2017, Bank Mutual also released its second quarter earnings.  Bank Mutual's second quarter earnings release disclosed that Bank Mutual had generated profits of $4.2 million during the second quarter of 2017, compared with $3.9 million the same period a year ago. For the full 2016 year, Bank Mutual saw net income jump to $17 million, a 19.7 percent increase over 2015.

40.     Along with these excellent financial trends, defendant Baumgarten continued to emphasize the positive direction in Bank Mutual's future earnings and future prospects:

David A. Baumgarten, President and Chief Executive Officer of Bank Mutual, commented, "We are pleased with the continued improvement in our net interest income, which was led by a combination of loan growth and modest expansion of our net interest margin," He added, "We are particularly gratified with the growth in our commercial and industrial loan portfolio, which has increased by 8.1% so far in 2017 and is up over 12% over the past twelve months." Mr. Baumgarten continued, "However, the decline in our non-interest income in recent periods continues to pose a challenge for us, as do recent increases in our non-interest expenses."  He concluded, "We are committed to improving our performance in each of these important areas."

41. Thus, the Proposed Transaction comes at a time where Bank Mutual's recent and future success has just started to be reflected in its current price per share. The Company's per share price is on the rise and the Proposed Transaction will inappropriately cap the growth stockholders have finally begun to see in their investment.

42. Indeed, as reported in a July 21, 2017 article in the Milwaukee Business Journal, Mutual never executed on plans in 2014 to engage in acquisitions in order to expand and diversity:

> In 2014, Bank Mutual explored the possibility of making acquisitions to diversify its services and grow its businesses, but those aspirations never came to fruition. The Brown Deer firm has slimmed down its total branch count in recent years as consumers increasingly conduct their banking business online and via their mobile phones. At the beginning of 2015, the company had 75 locations; it now operates around 57 throughout Wisconsin, and one in Minnesota.

## B.     The Proposed Transaction

40. On July 20, 2017, on the same day as defendant Baumgarten noted "continued improvement in our net interest income," Bank Mutual announced the Proposed Transaction:

> **Green Bay, WI and Milwaukee, WI** – July 20, 2017 – Associated Banc-Corp (NYSE: ASB) ("Associated") and Bank Mutual Corporation (NASDAQ: BKMU) ("Bank Mutual"), jointly announced today that they have entered into a definitive agreement under which Bank Mutual will merge with and into Associated. Bank Mutual's bank subsidiary will also merge with and into Associated's bank subsidiary, Associated Bank, N.A. The all stock transaction is valued at approximately $482 million, based on Associated's July 19, 2017, closing stock price of $24.60 per share.
>
> Associated and Bank Mutual share a proud heritage of serving Wisconsin and other Midwest communities for 156 and 125 years, respectively. Based in Green Bay, Associated Bank N.A. is the largest bank headquartered in Wisconsin. It serves more than one million customers in 100 communities across eight states. Bank Mutual is the holding company for the largest Milwaukee-based bank. It serves more than 120,000 customer accounts through banking locations in Wisconsin and Minnesota. As a result of this transaction, Associated will strengthen its Wisconsin network and expand services into nearly a dozen additional communities.

"We have deep respect for Bank Mutual and its dedicated team of colleagues. Both of our organizations are built around customer-centric strategies and understand the importance of delivering increasing value to customers, colleagues, communities and shareholders," said Associated president and CEO Philip B. Flynn. "The acquisition of Bank Mutual provides significant opportunity to increase our Wisconsin presence and improve the scale of our operations. Ultimately, this positions us to gain efficiencies while also making investments to better support the customer experience."

"I am confident the merger will benefit our customers and the communities we serve," said Bank Mutual president and CEO David Baumgarten. "In addition, Bank Mutual shareholders should benefit from Associated's strong and consistent financial performance and the potential growth opportunities going forward."

Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Bank Mutual shareholders will receive 0.422 shares of Associated common stock for each share of Bank Mutual common stock. The per common share consideration is valued at $10.38 per share based on the closing price of Associated common stock on July 19, 2017.

Upon consummation of the merger, Mr. Baumgarten will serve as a consultant to the CEO of Associated. In his new capacity, he will focus on client retention and employee engagement while also serving as an ambassador for the bank's community involvement. Bank Mutual chairman Michael T. Crowley, Jr. will be appointed to the combined companies' board of directors.

"I am extremely proud of what we have accomplished at Bank Mutual and look forward to working with the board of directors for the benefit of all our stakeholders as our companies come together," said Crowley.

The companies' boards anticipate that shareholders of both companies will benefit from expected cost savings from branch and operational synergies. Due to Associated's strong presence in Wisconsin, the companies also anticipate significant, ongoing opportunities for employees of both organizations to contribute to the franchise over the long-term. "We typically have around 300 job openings at any given time. We hope to fill these with banking professionals already serving our combined customers and communities," Flynn said.

Associated and Bank Mutual play an active role in supporting the socioeconomic health of their communities and will continue this commitment in the markets the combined companies will serve. Together, the companies had more than $1billion in lending and investments to minority and low- to-moderate-income customers and communities and provided more than 62,000 hours of volunteer services in 2016.

Subject to customary closing conditions, including regulatory approvals and approval by the Bank Mutual shareholders, the transaction is expected to close in the first quarter of 2018.

Associated expects this acquisition to be accretive to earnings per common share in 2019, excluding one-time charges, and expects the transaction to deliver strong returns on capital. The transaction is expected to produce less than 1% tangible book value per share dilution at closing.

Goldman Sachs & Co. LLC served as financial advisor, and Wachtell, Lipton, Rosen, & Katz served as legal advisor to Associated in this transaction. RBC Capital Markets, LLC served as financial advisor, and Quarles & Brady LLP served as legal advisor to Bank Mutual in this transaction.

40.    The strategic value of Bank Mutual to Associated and the impact the transaction had in the Wisconsin banking industry was highlighted by front-page coverage in the Milwaukee Journal Sentinel, which described the Proposed Transaction as a "deal that shook up Wisconsin's banking landscape" in a July 21, 2017 article.  Of particular importance to Associated was Bank Mutual's strong presence in the metropolitan Milwaukee and Wisconsin's western banking markets.  As the Journal Sentinel article noted, "Bank Mutual has a strong presence in metro Milwaukee, Eau Claire and Green Bay, with 58 branches, all but one of them in Wisconsin, and about 700 employees."  Just as important, according to the Journal Sentinel article, "Associated will gain access to 12 markets in Wisconsin where it does not have a presence."

41.    Associated's president and chief executive officer, Philip Flynn confirmed the strategic value of Bank Mutual to Associated's future plans when he told analysts in the conference call following the announcement of the Proposed Transaction, "This transaction will significantly enhance our market presence in western Wisconsin and deepen our roots in eastern Wisconsin".

42.    Just as important, from Associated's perspective, Bank Mutual was an ideal acquisition candidate in being well managed and possessing a strong balance sheet.  As Associated's Flynn noted in the July 20, 2017 conference call:

"We've always talked about doing the type of transaction that this represents," Flynn said. "Lower risk, efficiency driven, which usually means in your footprint. We think

14

there's more of those type of opportunities out there. As far as how long will this take, we'll be very focused on making sure this transaction goes well, it's integrated well."

43.     Rather than continuing to build upon Bank Mutual's great strides since 2013, the per share consideration being offered to Bank Mutual public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bank Mutual common stock is materially in excess of the amount offered given the Company's recent financial performance together with its prospects for future growth and earnings.

## C.     The Preclusive Deal Protection Devices

44.     To the detriment of Bank Mutual shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

45.     Section 5.8 of the Merger Agreement is a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

46.     The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

47.     Section 5.5(a) of the Merger Agreement requires the Board to provide Associated with written notice of any Acquisition Proposal within two (2) of its receipt.  Further, the Board must provide prior written notice within three (3) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Associated following Associated's receipt of the notice, so that Associated has the opportunity to adjust the terms and

conditions of the Merger Agreement so that the Company Acquisition Proposal ceases to be a Superior Proposal.

48. Thus, even if the Bank Mutual Board receives a competing bid that appeared to be "superior" to Associated's offer, it is precluded from entering into discussions and negotiations unless it first reasonably determines in good faith that the alternative proposal is, in fact, "Superior" or could reasonably be expected to lead to a "Superior Proposal." Consequently, the Merger Agreement prevents the Individual Defendants from exercising their fiduciary duties and precludes an investigation into competing proposals unless, as a prerequisite, the majority of the Bank Mutual Board first determines that the proposal is "superior" " or reasonably could be expected to lead to a "Superior Proposal."

49. In addition, the Merger Agreement provides that Bank Mutual must pay to Associated a termination fee of $17 million, representing 3.5% of the approximate deal value of $482 million, if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer. A termination fee in the amount 3.5% is unreasonably high for this type of transaction and strongly discourages any other bidder from coming forward.

50. Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Bank Mutual shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

51. Accordingly, Plaintiffs seek injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

52. Plaintiffs repeat and reallege each allegation set forth herein.

53. The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to public shareholders of Bank Mutual.

54. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiffs and other members of the Class of the true value of their investment in Bank Mutual.

55. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Bank Mutual because, among other reasons, they failed to take steps to maximize the value of Bank Mutual to its public shareholders.

56. The Individual Defendants dominate and control the business and corporate affairs of Bank Mutual, and are in possession of private corporate information concerning Bank Mutual's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Bank Mutual which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

57. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiffs and the other members of the Class.

58.     As a result of the actions of Defendants, Plaintiffs and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Bank Mutual's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

59.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiffs and the members of the Class, all to the irreparable harm of the members of the Class.

60.     Plaintiffs and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiffs and the Class
Against Associated for Aiding and Abetting the
Individual Defendants' Breaches of Fiduciary Duty**

61.     Plaintiffs repeat and reallege each allegation set forth herein.

62.     Associated has acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Bank Mutual's public shareholders, and has participated in such breaches of fiduciary duties.

63.     Associated knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Associated rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties.

64.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand injunctive relief in their favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class action and certifying Plaintiffs as Class representatives;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Merger, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.     Rescinding, to the extent already implemented, the Merger or any of the terms thereof, or granting Plaintiffs and the Class rescissory damages;

D.     Directing the Individual Defendants to account to Plaintiffs  and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

Dated: July 27, 2017

**ADEMI & O'REILLY, LLP**

By s/ *electronically signed by John D. Blythin*
    Guri Ademi (SBN: 1021729)
    Shpetim Ademi (SBN: 1026973)
    John D. Blythin (SBN: 1046105)
    Mark A. Eldridge (SBN: 1089944)
    3620 East Layton Avenue
    Cudahy, Wisconsin 53110
    Telephone:  (414) 482-8000
    Facsimile: (414) 482-8001

    MONTEVERDE & ASSOCIATES PC
    Juan Monteverde (*to file pro hac vice*)
    Miles Schreiner (*to file pro hac vice*)
    350 Fifth Avenue, 59th Floor
    New York, NY 10118
    Telephone: (212) 971-1341
    Fax: (212) 601-2610

    *Attorneys for Plaintiff*

# EXHIBIT 2

# EXHIBIT 2

FILED
07-27-2017
John Barrett
Clerk of Circuit Court
2017CV006202
Honorable Timothy
Witkowiak-22
Branch 22

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY
                       CIVIL DIVISION

---

|  |  |
| --- | --- |
| THOMAS L. PAQUIN, TODD BESTUL and DAVID BIRKHOLZ, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>BANK MUTUAL CORPORATION, MICHAEL T. CROWLEY, JR., DAVID A. BAUMGARTEN, RICHARD A. BROWN, MARK C. HERR, MIKE I. SHAFIR, DAVID C. BOERKE, LISA A. MAUER, ROBERT B. OLSON, THOMAS H. BUESTRIN, WILLIAM J. MIELKE and ASSOCIATED BANC-CORP,<br><br>        Defendants. | Civil Case No.<br><br>Case Code: 30106<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Thomas L. Paquin, Todd Bestul and David Birkholz ("Plaintiffs"), by and through their attorneys, allege upon information and belief, except to paragraphs 12-14 which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiffs bring the action individually, and on behalf of the holders of the common stock of Bank Mutual ("Bank Mutual" or the "Company"), against the directors of Bank Mutual, and other persons and entities (collectively, "Defendants") involved in a proposed transaction in which Associated Banc-Corp ("Associated") will acquire all of the outstanding stock of Bank Mutual for inadequate consideration (the "Proposed Transaction").

2. On July 20, 2017, Bank Mutual and Associated issued a joint press release announcing that they had entered into a definitive Agreement and Plan of Merger ("Merger

Agreement") pursuant to which Associated would acquire Bank Mutual in a transaction valued at approximately $482 million in the aggregate.

3.       Pursuant to the Merger Agreement, Bank Mutual with and into Associated (the "Merger"), with Associated as the surviving corporation.

4.       Under the terms of the merger agreement, which has been unanimously approved by the board of directors of Bank Mutual, Bank Mutual shareholders will receive 0.422 shares of Associated common stock for each share of Bank Mutual common stock. The per common share consideration is valued at $10.38 per share based on the closing price of Associated common stock on July 19, 2017.

5.       Like many financial institutions, Bank Mutual has been making steady progress to recovering from the financial crisis of 2008, before which its stock was trading at more than $12 per share.  By the start of 2013, Bank Mutual had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bank Mutual has confirmed in its most recent financial results, it is well on its way to a continuation of the positive direction of Bank Mutual's core profitability. Moreover, as the third largest financial institution holding company headquartered in the state of Wisconsin, Bank Mutual has coveted geographic concentration in the Southeast Wisconsin markets centered on the Milwaukee and Racine metropolitan areas.  In many ways, Bank Mutual is poised for strong growth and its solid balance sheet gives Bank Mutual an opportunity for further internal expansion and the exploration of acquisition opportunities.  Indeed, during 2014, Mutual was considering acquisitions to diversify its services and further expand, but for whatever reasons these plans were never executed.

6.     Thus, the consideration being offered to Bank Mutual public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bank Mutual common stock is materially in excess of the amount offered given the Company's recent financial performance together with its prospects for future growth and earnings.

7.     To ensure the success of the proposed transaction, Bank Mutual Board of Directors (the "Board") locked up the deal by agreeing to impermissible "deal-protection" devices, effectively rendering the Proposed Transaction a *fait accompli*.  For example, the Board agreed to: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Associated three (3) business days to match any competing proposal in the unlikely event that one emerges; and (iii) a $17 million termination fee to be paid to Associated if the Board agrees to a competing proposal.

8.     In pursuing the unlawful plan to facilitate the acquisition of Bank Mutual by Associated for grossly inadequate consideration, through a flawed process, each of the Defendants (defined below) violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

9.     For these reasons and as set forth in detail herein, Plaintiffs seek to enjoin Defendants from taking any steps to consummate the Merger or, in the event the Merger is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith and due care.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in Wisconsin, or is an individual who is a director of a corporation incorporated in Wisconsin and otherwise has sufficient minimum contacts with Wisconsin so as to render the exercise of jurisdiction by the Wisconsin courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court because one or more of the defendants is incorporated in this County, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) breaches of their fiduciary duties owed to Bank Mutual stockholders, occurred in this County, and defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES

12.     Plaintiff Thomas L. Paquin is and has been at all times relevant hereto a stockholder of Bank Mutual.

13.     Plaintiff Todd Bestul is and has been at all times relevant hereto a stockholder of Bank Mutual.

14.     Plaintiff David Birkholz is and has been at all times relevant hereto a stockholder of Bank Mutual.

15.     Defendant Bank Mutual is a Wisconsin corporation headquartered 4949 West Brown Deer Road, Milwaukee, Wisconsin.  Bank Mutual is $2.688 billion asset bank holding company.   Its primary subsidiary is Bank Mutual, a federally-chartered savings bank headquartered in Milwaukee, Wisconsin.  Bank Mutual has 58 banking offices in Wisconsin and

4

one in Minnesota. The largest concentration of the Company's offices is in southeastern Wisconsin, consisting of the Milwaukee metropolitan area and Racine and Kenosha Counties. Bank Mutual's stock is traded on the NASDAQ under the symbol "BKMU."

16.     Defendant Michael T. Crowley, Jr. ("Crowley") has served as a director of the Company since 1970 and is Chairman of Bank Mutual's Board.  Crowley also serves as Chairman of Bank Mutual's Executive Committee.  Crowley retired as Chief Executive Officer of Bank Mutual in 2013.  Through affiliates and directly, Crowley owns approximately 4.4% of Bank Mutual's outstanding stock.

17.     Defendant David A. Baumgarten ("Baumgarten") has served as a director of the Company since 2010.  Baumgarten succeeded Crowley as Chief Executive Officer of Mutual Bank in 2013.  Before 2010, Baumgarten served as an Executive Vice President–Regional Banking for defendant Associated.

18.     Defendant Richard A. Brown ("Brown") has served as a director of Bank Mutual since 2007.  Brown is a member of Bank Mutual's Nominating and Governance Committee. Brown is also Chairman of Bank Mutual's Audit Committee.

19.     Defendant Mark C. Herr ("Herr") has served as a director of Bank Mutual since 2001.  Herr is a member of Bank Mutual's Nominating and Governance Committee.

20.     Defendant Mike I. Shafir ("Shafir") has served as a director of Bank Mutual since 2016.

21.     Defendant David C. Boerke ("Boerke") has served as a director of Bank Mutual since 2007.  Boerke is a member of Bank Mutual's Compensation Committee.

22.     Defendant Lisa A. Mauer ("Mauer") has served as a director of Bank Mutual since May 2014.  Mauer is a member of Bank Mutual's Audit Committee.

23.     Defendant Robert B. Olson ("Olson") has served as a director of Bank Mutual since 2000.  Olson is a member of Bank Mutual's Audit Committee.  Olson is also a member of Bank Mutual's Compensation Committee.  Olson is also a member of Bank Mutual's Executive Committee.

24.     Defendant Thomas H. Buestrin ("Buestrin") has served as a director of Bank Mutual since 1995.  Buestrin is a member of Bank Mutual's Nominating and Governance Committee.  Buestrin is also a member of Bank Mutual's Compensation Committee.  Buestrin is also a member of Bank Mutual's Executive Committee.

25.     Defendant William J. Mielke ("Mielke") has served as a director of Bank Mutual since 2005.  Mielke is a Chairman of Bank Mutual's Nominating and Governance Committee.  Mielke is also chairman of Bank Mutual's Compensation Committee.  Mielke is also a member of Bank Mutual's Audit Committee.  Mielke is also a member of Bank Mutual's Executive Committee.

26.     Defendants Crowley, Baumgarten, Brown, Herr, Shafir, Boerke, Mauer, Olson, Buestrin and Mielke are collectively referred to as the "Individual Defendants."

27.     Defendant Associated, a Wisconsin corporation, is holding company for Associated Bank, with nearly $20 billion in assets and 200 banking locations throughout Wisconsin, Illinois and Minnesota, and commercial financial services in Indiana, Michigan, Missouri, Ohio and Texas

28.     Defendants Bank Mutual, Associated and the Individual Defendants are collectively referred to as "Defendants."

6

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiffs and the other shareholders of Bank Mutual and owe Plaintiffs and the other members of the Class (defined herein) the duties of good faith, fair dealing and loyalty.

30.     By virtue of their positions as directors and/or officers of Bank Mutual, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Bank Mutual to engage in the practices complained of herein.

31.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d) will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e) will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

32. Plaintiffs allege herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiffs and the other shareholders of Bank Mutual, including their duties of loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiffs or the other shareholders of Bank Mutual common stock.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this action pursuant to Wis. Stat. § 803.08, on behalf of all holders of Bank Mutual common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

34. This action is properly maintainable as a class action because:

(a) The Class is so numerous that joinder of all members is impracticable. According to Bank Mutual's most recent quarterly report on Form 10-Q, there are approximately 45,887,719 shares of Bank Mutual common stock outstanding. The actual number of public shareholders of Bank Mutual will be ascertained through discovery;

(b) There are questions of law and fact which are common to the Class, including *inter alia,* the following:

      i. whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect

to plaintiff and the other members of the Class in connection with the Proposed Transaction;

ii.     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiffs and the other members of the Class in connection with the Proposed Transaction; and

iii.    whether Plaintiffs and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

(c)     Each Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)     Each Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiffs do not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.    Background

35.    The Company is $2.7 billion asset bank holding company. Its primary subsidiary is Bank Mutual, a federally-chartered savings bank headquartered in Milwaukee, Wisconsin. Bank Mutual has 58 banking offices in Wisconsin and one in Minnesota. The largest concentration of the Company's offices is in southeastern Wisconsin, consisting of the Milwaukee metropolitan area and Racine and Kenosha Counties.

36.    Like many financial institutions, Bank Mutual has been making steady progress to recovering from the financial crisis of 2008, before which its stock was trading at more than $12 per share.  By the start of 2013, Bank Mutual had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bank Mutual has confirmed in its most recent financial results , it is well on its way to a showing  a continuation of the positive direction of Bank Mutual's core profitability.  Moreover, as the third largest financial institution holding company headquartered in the state of Wisconsin, Bank Mutual has coveted geographic concentration in the Southeast Wisconsin markets centered on the Milwaukee and Racine metropolitan areas.  In many ways, Bank Mutual is poised for strong growth and its solid balance sheet gives Bank Mutual an opportunity for further internal expansion and the exploration of acquisition opportunities.

37.    In a January 13, 2013 press release announcing fourth quarter and year-end earnings, defendants Crowley and Baumgarten struck a very positive note about Bank Mutual's progress and future prospects.

Michael T. Crowley, Jr., Chairman and Chief Executive Officer of Bank Mutual noted, "Our quarterly earnings continued to improve as we have stayed on course with strategies to enhance our earning asset mix and our funding mix." Mr. Crowley added, "Confidence

in our recent earnings trend enabled us to increase our dividend to shareholders to two cents per share during the fourth quarter." David A. Baumgarten, President of Bank Mutual, also commented, "With asset quality concerns continuing to diminish, our attention will be even more focused on the strategies necessary to increase our revenue and control our expenses."

38.     Bank Mutual's prospects continued to improve and by the start of 2014, Bank Mutual's was poised for further expansion.  In January 14, 2014 press release announcing fourth quarter and year-end earnings, defendant Baumgarten state as follows:

> David A. Baumgarten, President and Chief Executive Officer of Bank Mutual, commented, "Efforts to restructure our balance sheet the past few years have clearly paid offin 2014, resulting in our highest net interest margin as a public company, as well as a fourth-straight year of higher earnings."  Baumgarten added, "However, this period of restructuring is drawing to a close and we expect our net interest margin to be slightly lower in 2015.  We also expect our non-interest expenses to be higher in 2015." He continued, "We are confident, though, that growth in our loan portfolio, which has averaged 7.3% annually the past three years, can continue to fuel an improvement in earnings in 2015, as will modest improvements in our non-interest sources of revenue."

39.     On the same day as the announcement of the Proposed Transaction, July 20, 2017, Bank Mutual also released its second quarter earnings.  Bank Mutual's second quarter earnings release disclosed that Bank Mutual had generated profits of $4.2 million during the second quarter of 2017, compared with $3.9 million the same period a year ago. For the full 2016 year, Bank Mutual saw net income jump to $17 million, a 19.7 percent increase over 2015.

40.     Along with these excellent financial trends, defendant Baumgarten continued to emphasize the positive direction in Bank Mutual's future earnings and future prospects:

> David A. Baumgarten, President and Chief Executive Officer of Bank Mutual, commented, "We are pleased with the continued improvement in our net interest income, which was led by a combination of loan growth and modest expansion of our net interest margin," He added, "We are particularly gratified with the growth in our commercial and industrial loan portfolio, which has increased by 8.1% so far in 2017 and is up over 12% over the past twelve months." Mr. Baumgarten continued, "However, the decline in our non-interest income in recent periods continues to pose a challenge for us, as do recent increases in our non-interest expenses."  He concluded, "We are committed to improving our performance in each of these important areas."

41.     Thus, the Proposed Transaction comes at a time where Bank Mutual's recent and future success has just started to be reflected in its current price per share. The Company's per share price is on the rise and the Proposed Transaction will inappropriately cap the growth stockholders have finally begun to see in their investment.

42.     Indeed, as reported in a July 21, 2017 article in the Milwaukee Business Journal, Mutual never executed on plans in 2014 to engage in acquisitions in order to expand and diversity:

> In 2014, Bank Mutual explored the possibility of making acquisitions to diversify its services and grow its businesses, but those aspirations never came to fruition. The Brown Deer firm has slimmed down its total branch count in recent years as consumers increasingly conduct their banking business online and via their mobile phones. At the beginning of 2015, the company had 75 locations; it now operates around 57 throughout Wisconsin, and one in Minnesota.

## B.      The Proposed Transaction

40.     On July 20, 2017, on the same day as defendant Baumgarten noted "continued improvement in our net interest income," Bank Mutual announced the Proposed Transaction:

> **Green Bay, WI and Milwaukee, WI** – July 20, 2017 – Associated Banc-Corp (NYSE: ASB) ("Associated") and Bank Mutual Corporation (NASDAQ: BKMU) ("Bank Mutual"), jointly announced today that they have entered into a definitive agreement under which Bank Mutual will merge with and into Associated. Bank Mutual's bank subsidiary will also merge with and into Associated's bank subsidiary, Associated Bank, N.A. The all stock transaction is valued at approximately $482 million, based on Associated's July 19, 2017, closing stock price of $24.60 per share.
>
> Associated and Bank Mutual share a proud heritage of serving Wisconsin and other Midwest communities for 156 and 125 years, respectively.  Based in Green Bay, Associated Bank N.A. is the largest bank headquartered in Wisconsin. It serves more than one million customers in 100 communities across eight states. Bank Mutual is the holding company for the largest Milwaukee-based bank. It serves more than 120,000 customer accounts through banking locations in Wisconsin and Minnesota. As a result of this transaction, Associated will strengthen its Wisconsin network and expand services into nearly a dozen additional communities.

"We have deep respect for Bank Mutual and its dedicated team of colleagues. Both of our organizations are built around customer-centric strategies and understand the importance of delivering increasing value to customers, colleagues, communities and shareholders," said Associated president and CEO Philip B. Flynn. "The acquisition of Bank Mutual provides significant opportunity to increase our Wisconsin presence and improve the scale of our operations. Ultimately, this positions us to gain efficiencies while also making investments to better support the customer experience."

"I am confident the merger will benefit our customers and the communities we serve," said Bank Mutual president and CEO David Baumgarten. "In addition, Bank Mutual shareholders should benefit from Associated's strong and consistent financial performance and the potential growth opportunities going forward."

Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Bank Mutual shareholders will receive 0.422 shares of Associated common stock for each share of Bank Mutual common stock. The per common share consideration is valued at $10.38 per share based on the closing price of Associated common stock on July 19, 2017.

Upon consummation of the merger, Mr. Baumgarten will serve as a consultant to the CEO of Associated. In his new capacity, he will focus on client retention and employee engagement while also serving as an ambassador for the bank's community involvement. Bank Mutual chairman Michael T. Crowley, Jr. will be appointed to the combined companies' board of directors.

"I am extremely proud of what we have accomplished at Bank Mutual and look forward to working with the board of directors for the benefit of all our stakeholders as our companies come together," said Crowley.

The companies' boards anticipate that shareholders of both companies will benefit from expected cost savings from branch and operational synergies. Due to Associated's strong presence in Wisconsin, the companies also anticipate significant, ongoing opportunities for employees of both organizations to contribute to the franchise over the long-term. "We typically have around 300 job openings at any given time. We hope to fill these with banking professionals already serving our combined customers and communities," Flynn said.

Associated and Bank Mutual play an active role in supporting the socioeconomic health of their communities and will continue this commitment in the markets the combined companies will serve. Together, the companies had more than $1billion in lending and investments to minority and low- to-moderate-income customers and communities and provided more than 62,000 hours of volunteer services in 2016.

Subject to customary closing conditions, including regulatory approvals and approval by the Bank Mutual shareholders, the transaction is expected to close in the first quarter of 2018.

Associated expects this acquisition to be accretive to earnings per common share in 2019, excluding one-time charges, and expects the transaction to deliver strong returns on capital. The transaction is expected to produce less than 1% tangible book value per share dilution at closing.

Goldman Sachs & Co. LLC served as financial advisor, and Wachtell, Lipton, Rosen, & Katz served as legal advisor to Associated in this transaction. RBC Capital Markets, LLC served as financial advisor, and Quarles & Brady LLP served as legal advisor to Bank Mutual in this transaction.

40.     The strategic value of Bank Mutual to Associated and the impact the transaction had in the Wisconsin banking industry was highlighted by front-page coverage in the Milwaukee Journal Sentinel, which described the Proposed Transaction as a "deal that shook up Wisconsin's banking landscape" in a July 21, 2017 article.  Of particular importance to Associated was Bank Mutual's strong presence in the metropolitan Milwaukee and Wisconsin's western banking markets.  As the Journal Sentinel article noted, "Bank Mutual has a strong presence in metro Milwaukee, Eau Claire and Green Bay, with 58 branches, all but one of them in Wisconsin, and about 700 employees."  Just as important, according to the Journal Sentinel article, "Associated will gain access to 12 markets in Wisconsin where it does not have a presence."

41.     Associated's president and chief executive officer, Philip Flynn confirmed the strategic value of Bank Mutual to Associated's future plans when he told analysts in the conference call following the announcement of the Proposed Transaction, "This transaction will significantly enhance our market presence in western Wisconsin and deepen our roots in eastern Wisconsin".

42.     Just as important, from Associated's perspective, Bank Mutual was an ideal acquisition candidate in being well managed and possessing a strong balance sheet.  As Associated's Flynn noted in the July 20, 2017 conference call:

"We've always talked about doing the type of transaction that this represents," Flynn said. "Lower risk, efficiency driven, which usually means in your footprint. We think

there's more of those type of opportunities out there. As far as how long will this take, we'll be very focused on making sure this transaction goes well, it's integrated well."

43. Rather than continuing to build upon Bank Mutual's great strides since 2013, the per share consideration being offered to Bank Mutual public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bank Mutual common stock is materially in excess of the amount offered given the Company's recent financial performance together with its prospects for future growth and earnings.

### C.    The Preclusive Deal Protection Devices

44. To the detriment of Bank Mutual shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

45. Section 5.8 of the Merger Agreement is a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

46. The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

47. Section 5.5(a) of the Merger Agreement requires the Board to provide Associated with written notice of any Acquisition Proposal within two (2) of its receipt.  Further, the Board must provide prior written notice within three (3) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Associated following Associated's receipt of the notice, so that Associated has the opportunity to adjust the terms and

conditions of the Merger Agreement so that the Company Acquisition Proposal ceases to be a Superior Proposal.

48.     Thus, even if the Bank Mutual Board receives a competing bid that appeared to be "superior" to Associated's offer, it is precluded from entering into discussions and negotiations unless it first reasonably determines in good faith that the alternative proposal is, in fact, "Superior" or could reasonably be expected to lead to a "Superior Proposal." Consequently, the Merger Agreement prevents the Individual Defendants from exercising their fiduciary duties and precludes an investigation into competing proposals unless, as a prerequisite, the majority of the Bank Mutual Board first determines that the proposal is "superior" " or reasonably could be expected to lead to a "Superior Proposal."

49.     In addition, the Merger Agreement provides that Bank Mutual must pay to Associated a termination fee of $17 million, representing 3.5% of the approximate deal value of $482 million, if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer. A termination fee in the amount 3.5% is unreasonably high for this type of transaction and strongly discourages any other bidder from coming forward.

50.     Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Bank Mutual shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

51.    Accordingly, Plaintiffs seek injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

52.    Plaintiffs repeat and reallege each allegation set forth herein.

53.    The Individual Defendants have violated fiduciary duties of care, loyalty and good faith owed to public shareholders of Bank Mutual.

54.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiffs and other members of the Class of the true value of their investment in Bank Mutual.

55.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Bank Mutual because, among other reasons, they failed to take steps to maximize the value of Bank Mutual to its public shareholders.

56.    The Individual Defendants dominate and control the business and corporate affairs of Bank Mutual, and are in possession of private corporate information concerning Bank Mutual's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Bank Mutual which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

57.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiffs and the other members of the Class.

58.     As a result of the actions of Defendants, Plaintiffs and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Bank Mutual's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

59.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiffs and the members of the Class, all to the irreparable harm of the members of the Class.

60.     Plaintiffs and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiffs and the Class**
**Against Associated for Aiding and Abetting the**
**Individual Defendants' Breaches of Fiduciary Duty**

61.     Plaintiffs repeat and reallege each allegation set forth herein.

62.     Associated has acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Bank Mutual's public shareholders, and has participated in such breaches of fiduciary duties.

63.     Associated knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Associated rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties.

64.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand injunctive relief in their favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiffs as Class representatives;

18

B.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Merger, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.      Rescinding, to the extent already implemented, the Merger or any of the terms thereof, or granting Plaintiffs and the Class rescissory damages;

D.      Directing the Individual Defendants to account to Plaintiffs  and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.      Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: July 27, 2017

**ADEMI & O'REILLY, LLP**

By s/ *electronically signed by John D. Blythin*
            Guri Ademi (SBN: 1021729)
            Shpetim Ademi (SBN: 1026973)
            John D. Blythin (SBN: 1046105)
            Mark A. Eldridge (SBN: 1089944)
            3620 East Layton Avenue
            Cudahy, Wisconsin 53110
            Telephone:  (414) 482-8000
            Facsimile: (414) 482-8001

            MONTEVERDE & ASSOCIATES PC
            Juan Monteverde (*to file pro hac vice*)
            Miles Schreiner (*to file pro hac vice*)
            350 Fifth Avenue, 59th Floor
            New York, NY 10118
            Telephone: (212) 971-1341
            Fax: (212) 601-2610

            *Attorneys for Plaintiffs*

# EXHIBIT 3

# EXHIBIT 3

FILED
08-30-2017
John Barrett
Clerk of Circuit Court
2017CV007312
Honorable Glenn H
Yamahiro-34
Branch 34

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **MILWAUKEE COUNTY**

FREDERICK WOLLENBURG
W 2540 Grouse Road
Dalton, WI 53926

           Case No. _____

           Case Code: 30106

On Behalf of Himself and All Others Similarly
Situated,

           **JURY TRIAL DEMANDED**

           Plaintiffs,

              v.

BANK MUTUAL CORPORATION,
MICHAEL T. CROWLEY, JR.,DAVID A.
BAUMGARTEN, WILLIAM J. MIELKE,
THOMAS H. BUESTRIN, ROBERT B.
OLSON, MARK C. HERR, DAVID C.
BOERKE, RICHARD A. BROWN, LISA A.
MAUER, and MIKE I. SHAFIR
4949 West Brown Deer Road
Milwaukee, WI53223,


ASSOCIATED BANC-CORP
433 Main Street
Green Bay, Wisconsin 54301,

           Defendants,

---

## <u>CLASS ACTION COMPLAINT</u>

---

Plaintiff Frederick Wollenburg("Plaintiff"), through undersigned counsel, brings this Complaint on behalf of himself and the holders of the common stock of Bank Mutual Corporation("Bank Mutual" or the "Company") against (1) the members of the Board of Directors (as defined herein) of Bank Mutual for breaching their fiduciary duties and (2)Bank Mutual and Associated Banc-Corp ("Associated") for aiding and abetting these breaches. This action seeks to enjoin the merger of Bank Mutual with and into Associated, with Associated surviving the merger (the "Merger" or "Proposed Merger"). This action also seeks an order requiring that the Bank Mutual Board comply with their fiduciary obligations and awarding Plaintiff and the Class (as defined herein) damages suffered as a result of Defendants' wrongdoing.

The allegations of this Complaint are based on Plaintiff's knowledge as to himself, and on information and belief based upon, among other things, the investigation of counsel and publicly available information, as to all other matters.

## SUMMARY OF THE ACTION

1.     This is a shareholder class action brought by Plaintiff on behalf of Bank Mutual shareholders against Defendants for breaches of fiduciary duty and/or other violations of state law arising out of their efforts to effectuate the merger of Bank Mutual with Associated pursuant to an unfair process, for an unfair price, and lacking material disclosures.

2.     On July 20, 2017, Bank Mutual announced that it had entered into a definitive merger agreement (the "Merger Agreement") with Associated, pursuant to which each share of Bank Mutual common stock will be converted into the right to receive just 0.422 shares of Associated common stock (the "Merger Consideration").This consideration is inadequate and undervalues the Company.  It does not adequately compensate shareholders for Bank Mutual's strong operating performance, recent stock price performance, or the synergies that Associated

will reap from the Proposed Merger.

3.     The Proposed Merger is further marred by a flawed process and conflicts of interests, not the least of which is that certain members of the Company's management team, including the Company's Chairman, Mr. Crowley, and the Company's President and CEO, Mr. Baumgarten, have managed to secure for themselves positions with the combined company post-close.  What is more, some of the directors will receive windfall profits not shared by non-insider shareholders and will be able to cash out otherwise illiquid blocks of stock and other equity awards in the Company.

4.     To secure these benefits, the Board further exacerbated their breaches of fiduciary duty by agreeing to certain deal protection devices in the Merger Agreement that will prevent other bidders from making successful competing offers.  These include:

- a termination fee provision whereby the Board agreed that Bank Mutual would pay Associated a termination fee of up to $17 million if it terminates the Proposed Merger;

- a strict no-solicitation provision that effectively precludes the Board from attempting to maximize shareholder value by soliciting bids from any other potential acquirer, requires that the Board cease certain existing communications and negotiations after a certain time, and limits the ability of the Board to negotiate a superior proposal with a competing acquirer, thereby prohibiting it from fulfilling its fiduciary duties, in violation of the law;

- an information rights and matching rights provision that requires the Company to notify Associated of certain unsolicited competing offers, provide Associated with information regarding such offers, and negotiate in good faith with Associated regarding the same; and

- several voting agreements, pursuant to which an as-of-yet undisclosed amount of the Company's outstanding common stock is locked-up in favor of the Proposed Merger.

These provisions and agreements substantially and improperly limit the Board's ability to investigate and pursue superior proposals and alternatives and, absent judicial intervention, virtually guarantee the consummation of the Proposed Merger.

5.     In sum, Defendants failed to maximize shareholder value and to protect the interests of Bank Mutual shareholders.  Instead, Defendants engaged in a process that was designed to benefit Associated and secure material personal benefits for themselves. Each of the Individual Defendants has breached his fiduciary duties and/or has aided and abetted such breaches by favoring Associated's or his own financial interests over those of Bank Mutual and its public, non-insider shareholders.  As a result, Plaintiff and the other public shareholders are receiving an unfair price in the Proposed Merger and lack the necessary and material information to consider it.

6.     In facilitating the acquisition of Bank Mutual by Associated for inadequate consideration and through a flawed process, each of the Defendants breached and/or aided the other Defendants' breaches of their fiduciary duties. As set forth below, instead of working to maximize shareholder value as required, Defendants agreed to hand over the Company and its future prospects to Associated for a demonstrably unfair price. If Defendants are able to consummate the Proposed Merger, Bank Mutual's public shareholders will not receive the true value of their investment. The Merger Consideration does not reflect Bank Mutual's intrinsic value or the value of the Company as the target of a full and fair sale process.

7.     Finally, in order to convince Bank Mutual's stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a Form S-4 Registration Statement with the Securities and Exchange Commission on or about August 21, 2017 (the "Registration

Statement"). In doing so, the Individual Defendants caused Bank Mutual to fail to disclose all material information necessary for Bank Mutual shareholders to make an informed and knowledgeable decision regarding the Proposed Merger.  Specifically, as set forth herein, the Registrations Statement omits and misrepresents material information about, among other things, significant material events leading up to the Board's approval of the Merger Agreement and the financial analyses performed by RBC Capital Markets, LLC ("RBCCM"), the Company's financial advisor in connection with the Proposed Merger – all in contravention of Defendants' duty of disclosure.  These material facts must be disclosed in order for shareholders to make a fully-informed vote on the Proposed Merger.

8.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the Proposed Merger, or, in the event the Proposed Merger is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties, and from the other Defendants for aiding and abetting same.

## PARTIES

### A.     Plaintiff

9.     Plaintiff is, and at all relevant times was, a continuous shareholder of Bank Mutual.

### B.     Defendants

10.     Bank Mutual Corporation (previously defined as "Bank Mutual" or the "Company") is a corporation organized and existing under the laws of the State of Wisconsin with its principal executive offices located at 4949 West Brown Deer Road, Milwaukee, Wisconsin 53223.

11.     Defendant Michael T. Crowley, Jr.("Crowley) serves as the Chairman of the Company and its subsidiary, Bank Mutual ("Bank"), and has served as a director of the

Company since 1970. Mr. Crowley also served as Chief Executive Officer ("CEO") of the Company and the Bank until 2013.

12.     Defendant David A. Baumgarten ("Baumgarten") has served as a director of the Company since 2010. Mr. Baumgarten has also served as President of the Company and Bank, and CEO of the Company and Bank since 2013.

13.     Defendant William J. Mielke ("Mielke") has served as a director of the Company since 1988.

14.     Defendant Thomas H. Buestrin ("Buestrin") has served as a director of the Company since 1995.

15.     Defendant Robert B. Olson ("Olson") has served as a director of the Company since 2000.

16.     Defendant Mark C. Herr ("Herr) has served as a director of the Company since 2001.

17.     Defendant David C. Boerke ("Boerke") has served as a director of the Company since 2007.

18.     Defendant Richard A. Brown ("Brown") has served as a director of the Company since 2007.

19.     Defendant Lisa A. Mauer ("Mauer") has served as a director of the Company since 2014.

20.     Defendant Mike I. Shafir ("Shafir") has served as a director of the Company since 2016.

21.     Defendants Crowley, Baumgarten, Mielke, Buestrin, Olson, Herr, Boerke, Brown, Mauer, and Shafir form the Board of Directors of Bank Mutual and are collectively referred to herein as the "Board" or the "Individual Defendants."

22.     Defendant Associated Banc-Corp ("Associated") is a corporation organized and existing under the laws of the State of Wisconsin with its principal executive offices located at 433 Main Street, Green Bay, Wisconsin 54301.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this matter because Bank Mutual and Associated are incorporated in Wisconsin, each company conducts business in Wisconsin, the Individual Defendants are directors of a Wisconsin corporation, and much of the improper conduct complained of herein occurred in and/or was directed at Wisconsin.

24.     Venue is proper in this Court pursuant to Wisconsin Statute § 801.50(2), in that, upon information and belief, Bank Mutual and Associated do substantial business in this County.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Bank Mutual and owe them a duty of care, loyalty, good faith, candor, and independence.

26.     By virtue of their positions as directors and/or officers of Bank Mutual, the Individual Defendants, at all relevant times, had the power to control and influence Bank Mutual, did control and influence Bank Mutual, and caused Bank Mutual to engage in the practices complained of herein.

27.     To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that: (a)adversely affects the value provided to the Company's shareholders; (b) favors themselves or discourages or inhibits alternative offers to purchase control of the corporation or its assets; (c) adversely affects their duty to search and secure the best value reasonably available under the circumstances for the Company's shareholders; (d) will provide

the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders; and/or (e) contractually prohibits the Individual Defendants from complying with or carrying out their fiduciary duties.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from: (a) participating in any transaction where the Individual Defendants' loyalties are divided; (b) participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or (c) unjustly enriching themselves at the expense or to the detriment of the public shareholders.

29.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Merger, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to the Company, or are aiding and abetting others in violating those duties.

30.     The Individual Defendants also owe the Company's shareholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Merger and, particularly, the fairness of the price offered for the shareholders' equity interest. The Individual Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Merger and/or aiding and abetting other Defendants' breaches.

## AIDING AND ABETTING

31.     In addition to the wrongful conduct herein alleged as giving rise to primary liability, certain of the Defendants further aided and abetted and/or assisted each other in the breach of their respective duties as herein alleged.

32.     During all relevant times hereto, the Defendants, and each of them, initiated a

course of conduct that was designed to: (i) favor Associated and the Individual Defendants; (ii) permit Associated to acquire Bank Mutual pursuant to a defective sales process; (iii) permit Associated to acquire Bank Mutual for an unfair price; and (iv) permit Associated to acquire Bank Mutual without Bank Mutual's shareholders being fully informed of all material information relating to the Proposed Merger. In furtherance of this plan and course of conduct, Defendants, and each of them, took the actions as set forth herein.

33.     Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions, as particularized herein, to substantially assist the commission of the wrongdoing complained of, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to, and furtherance of, the wrongdoing. Defendants' acts of aiding and abetting included, inter alia, the acts each of them are alleged to have committed in furtherance of the common enterprise and common course of conduct complained of herein.

## CLASS REPRESENTATION ALLEGATIONS

34.     Plaintiff brings this action on behalf of himself and as a class action pursuant to Section 803.08 of the Wisconsin Annotated Statutes on behalf of all other holders of Bank Mutual common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

35.     This action is properly maintainable as a class action because:

        a.      The Class is so numerous that joinder of all members is impracticable. As of June 30, 2017, there were approximately 45,932,253 outstanding shares of Bank Mutual common stock. The actual number of public shareholders of Bank Mutual will be

ascertained through discovery.

b.     There are questions of law and fact that are common to the Class, including the following:

        i)     whether the Individual Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with the Proposed Merger;

        ii)     whether the Individual Defendants have breached their fiduciary duty to obtain the best price available for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Merger;

        iii)     whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

        iv)     whether Bank Mutual and Associated aided and abetted the Individual Defendants' breaches of fiduciary duty; and

        v)     whether Plaintiff and other members of the Class would suffer irreparable injury were the Proposed Merger consummated.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

f.       Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

A.       **Corporate Background**

36.     Bank Mutual is a savings and loan holding company.  Its subsidiary bank was founded in 1892 and is a federally-chartered savings bank headquartered in Milwaukee, Wisconsin. Its primary business is community banking, which includes attracting deposits from and making loans to the general public and private businesses, as well as governmental and non-profit entities. As of June 30, 2017, Bank Mutual had 62 banking offices in Wisconsin and one in Minnesota.

37.     Similarly, Associated is a bank holding company. Its bank subsidiary, Associated Bank, N.A., traces its history back to the founding of the Bank of Neenah in 1861. As of December 31, 2016, Associated owned one nationally chartered commercial bank headquartered in Green Bay, Wisconsin, which serves local communities across the upper Midwest; one nationally chartered trust company headquartered in Wisconsin; and ten limited purpose banking and nonbanking subsidiaries either located in or conducting business primarily in its three-state footprint (Wisconsin, Illinois, and Minnesota) that are closely related or incidental to the business of banking or financial in nature. Through Associated Bank, N.A. and various nonbanking subsidiaries, Associated provides a broad array of banking and nonbanking products and services to individuals and businesses serving more than 100 communities, primarily within Associated's three state branch footprint. As of June 30, 2017, Associated had 214 branches in

Wisconsin, Illinois and Minnesota.

**B.**     **Background of the Proposed Merger**

38.    Beginning in 2016, Bank Mutual's management began discussions with representatives of RBCCM regarding a potential strategic review. In February 2017, the Board authorized management to pursue a potential merger of equals or other transaction with a similarly sized Midwest institution (Party 1) and to reach out on a preliminary basis to other parties regarding a potential sale of Bank Mutual. Thereafter, throughout February 2017, RBCCM reached out to 11 total parties, of which three showed initial interest – Associated, Party 2, and Party 3.

39.    Concurrently, on February 27, 2017, Bank Mutual submitted an initial non-binding indication of interest to enter into a merger of equals or similar transaction with Party 1. However, after considering that indication, Party 1 informed Bank Mutual that the price offered by Bank Mutual was too low, and requested that Bank Mutual provide a better offer. On March 8, 2017, Bank Mutual provided a revised non-binding indication of interest to Party 1, but that offer still did not meet Party 1's expectations. Accordingly, Bank Mutual discontinued negotiations with Party 1.

40.    Thereafter, the Board decided to pursue a sale of Bank Mutual instead. To this end, on May 1, 2017, the Board directed management and RBCCM to contact Party 2, Party 3, and Associated and conduct a formal bidding process for the potential acquisition of Bank Mutual. Notably, Bank Mutual and RBCCM did not again approach the other parties previously contacted or any additional parties.

41.    When contacted again, however, Party 3 was no longer in a position to pursue an acquisition, so Bank Mutual negotiated with Party 2 and Associated only. On June 16, 2017, Associated and Party 2 submitted non-binding indications of interest. Associated proposed an

all-stock transaction with a fixed exchange ratio of 0.420 shares of Associated common stock for each outstanding share of Bank Mutual common stock, which, based on the then-current trading price of Associated common stock, would have provided consideration with a value of $10.27 per share of Bank Mutual common stock. Party 2 proposed a 90% stock transaction with a fixed exchange ratio for each outstanding share of Bank Mutual common stock or an equivalent amount of cash, which, based on the then-current trading price of Party 2's common stock, would have provided consideration with a value of $9.91 per share of Bank Mutual common stock. In addition, Party 2 offered seats on its advisory board and noted that it was willing discuss a potential holding company board seat.

42.     After reviewing these offers with management, Mr. Crowley, Bank Mutual's chairman, directed representatives of RBCCM to reach out to Associated and Party 2 and ask them to provide a revised best and final offer, which they did on June 30, 2017.  On that date, Associated again proposed an all-stock transaction with an increased fixed exchange ratio of 0.422 shares of Associated common stock for each outstanding share of Bank Mutual common stock, which, based on the then-current trading price of Associated common stock, would have provided consideration with a value of $10.63 per share of Bank Mutual common stock. In addition, Associated offered one seat on the Associated board. Party 2 again proposed a 90% stock transaction with a higher fixed exchange ratio for each outstanding share of Bank Mutual common stock, which, based on the then-current trading price of Party 2's common stock would have provided consideration with a value of $10.39 per share of Bank Mutual common stock. Shareholders electing to receive cash would receive **a fixed $10.45 per share**. In addition, Party 2 offered seats on its advisory board and Bank Mutual collaboration on filling one holding company board seat with a director from Wisconsin.

43.     The Bank Mutual Board elected to move forward toward the negotiation and

signing of a definitive merger agreement with Associated and informed Associated and Party 2 of this decision. Thereafter, Bank Mutual began reverse due diligence on Associated, to determine the value of the consideration that it was offering. During this time, Mr. Crowley, Bank Mutual's Chairman, kept the other directors apprised of developments. And, on June 20, 2017, Bank Mutual and Associated executed the Merger Agreement.

## C. The Proposed Merger

44. On July 20, 2017, Bank Mutual and Associated issued a joint press release announcing the Proposed Merger, which provides in pertinent part:

### Associated Banc-Corp to acquire Bank Mutual Corporation

**Green Bay, WI and Milwaukee, WI** – July 20, 2017 – Associated Banc-Corp (NYSE: ASB) ("Associated") and Bank Mutual Corporation (NASDAQ: BKMU) ("Bank Mutual"), jointly announced today that they have entered into a definitive agreement under which Bank Mutual will merge with and into Associated. Bank Mutual's bank subsidiary will also merge with and into Associated's bank subsidiary, Associated Bank, N.A. The all stock transaction is valued at approximately $482 million, based on Associated's July 19, 2017, closing stock price of $24.60 per share.

Associated and Bank Mutual share a proud heritage of serving Wisconsin and other Midwest communities for 156 and 125 years, respectively. Based in Green Bay, Associated Bank N.A. is the largest bank headquartered in Wisconsin. It serves more than one million customers in 100 communities across eight states. Bank Mutual is the holding company for the largest Milwaukee-based bank. It serves more than 120,000 customer accounts through banking locations in Wisconsin and Minnesota. As a result of this transaction, Associated will strengthen its Wisconsin network and expand services into nearly a dozen additional communities.

"We have deep respect for Bank Mutual and its dedicated team of colleagues. Both of our organizations are built around customer-centric strategies and understand the importance of delivering increasing value to customers, colleagues, communities and shareholders," said Associated president and CEO Philip B. Flynn. "The acquisition of Bank Mutual provides significant opportunity to increase our Wisconsin presence and improve the scale of our operations. Ultimately, this positions us to gain efficiencies while also making investments to better support the customer experience."

"I am confident the merger will benefit our customers and the communities we serve," said Bank Mutual president and CEO David Baumgarten. "In addition,

Bank Mutual shareholders should benefit from Associated's strong and consistent financial performance and the potential growth opportunities going forward."

Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Bank Mutual shareholders will receive 0.422 shares of Associated common stock for each share of Bank Mutual common stock. The per common share consideration is valued at $10.38 per share based on the closing price of Associated common stock on July 19, 2017.

Upon consummation of the merger, Mr. Baumgarten will serve as a consultant to the CEO of Associated. In his new capacity, he will focus on client retention and employee engagement while also serving as an ambassador for the bank's community involvement. Bank Mutual chairman Michael T. Crowley, Jr. will be appointed to the combined companies' board of directors.

"I am extremely proud of what we have accomplished at Bank Mutual and look forward to working with the board of directors for the benefit of all our stakeholders as our companies come together," said Crowley.

The companies' boards anticipate that shareholders of both companies will benefit from expected cost savings from branch and operational synergies. Due to Associated's strong presence in Wisconsin, the companies also anticipate significant, ongoing opportunities for employees of both organizations to contribute to the franchise over the long-term. "We typically have around 300 job openings at any given time. We hope to fill these with banking professionals already serving our combined customers and communities," Flynn said.

Associated and Bank Mutual play an active role in supporting the socioeconomic health of their communities and will continue this commitment in the markets the combined companies will serve. Together, the companies had more than $1billion in lending and investments to minority and low- to-moderate-income customers and communities and provided more than 62,000 hours of volunteer services in 2016.

Subject to customary closing conditions, including regulatory approvals and approval by the Bank Mutual shareholders, the transaction is expected to close in the first quarter of 2018.

Associated expects this acquisition to be accretive to earnings per common share in 2019, excluding one-time charges, and expects the transaction to deliver strong returns on capital. The transaction is expected to produce less than 1% tangible book value per share dilution at closing.

Goldman Sachs & Co. LLC served as financial advisor, and Wachtell, Lipton, Rosen, & Katz served as legal advisor to Associated in this transaction. RBC Capital Markets, LLC served as financial advisor, and Quarles & Brady LLP served as legal advisor to Bank Mutual in this transaction.

**D.** **The Proposed Merger Does Not Provide Adequate Value to Shareholders.**

45.     As noted above, pursuant to the terms of the Merger Agreement, shareholders will receive an implied value of only **$10.44** for each share of Bank Mutual common stock that they own (previously defined as the "Merger Consideration"). This Merger Consideration is inadequate and undervalues the Company. It is facially lower than the guaranteed cash consideration offered by Party 2, contrary to the Company's recent operating performance, well below the Company's recent trading history, and inconsistent with the synergies that Associated will reap from the consummation of the Proposed Merger.

46.     As an initial matter, the Merger Consideration is contrary to the Company's recent operating performance. For example, per the Company's most recently filed annual report, the Company reported net profit for the year-ended December 31, 2016 of $17 million, up 19.6% from $14.2 million in the previous year. In addition, the Company's earnings per share was up 19.4% from the previous year.

47.     On January 18, 2017, the Company reported its results for the fourth quarter and full year of 2016. For the fourth quarter, the Company reported net income of $4.1 million or $0.09 per diluted share, a 10.5% increase over net income of $3.7 million or $0.08 per diluted share in 2015. On a full-year basis, Bank Mutual reported net income of $17.0 million or $0.37 per diluted share in 2016 compared to $14.2 million or $0.31 per diluted share in 2015. And, in commenting on the results, Mr. Baumgarten noted, "[l]ooking forward, we remain optimistic that we will continue to increase our total revenue, maintain our asset quality, and effectively manage our non-interest expenses so that earnings in 2017 will continue to show improvement."

48.     Bank Mutual achieved even better results in the third quarter of 2016, as reported by the Company on October 19, 2016. According to those results, the Company's net income of $4.5 million or $0.10 per diluted share in the third quarter of 2016 was a 33.2% increase over net

income of $3.3 million or $0.07 per diluted share in the same quarter of 2015.

49.     In addition to this recent, sustained upside, the Company provides a high margin of safety to its common stockholders. Indeed, according to a regular Company analyst report published on June 2, 2017, in the last three years, the Company's net profit margin has averaged 19.0%, a "superior" figure. In addition, the relative yield of Bank Mutual's stock, defined by its yield of 2.4% divided by average yield of dividend yielding stocks in the Nasdaq-100 index of 1.2% is *206.0%.* This suggests the stock is undervalued in dividend yield terms.   And, subsequent to the Merger, it is unknown whether former Bank Mutual shareholders will continue to receive dividends at all, let alone dividends on as favorable terms, as Associated has reserved the right in the Registration Statement to change its dividend policy at any time.

50.     Unsurprisingly, in light of these results, the Company's stock regularly trended upward in the months preceding the Merger Agreement. Indeed, in the first quarter of 2017 alone, the Company hit a new 52-week high *nine* times.

51.     Finally, the Merger Consideration also does not adequately value the profitability and market position that Associated will reap from the consummation of the Proposed Merger. For example, according to the press release issued in connection with the announcement of the Proposed Merger, "the companies' boards anticipate that shareholders of both companies will benefit from expected cost savings from branch and operational synergies." Yet, according to the Registration Statement, Bank Mutual common shareholders will inherit significant costs in connection with the combined company's efforts to achieve these desired synergies. According to the Registration statement, "[t]hese fees and costs have been, and will continue to be, substantial."

## E. The Proposed Merger Is the Result of a Flawed Process that Is Marred by Conflicts of Interest.

52. The insufficient consideration contemplated by the Proposed Merger is the result of a flawed and conflicted process that led to the execution of the Merger Agreement. For example, in connection with the consummation of the Proposed Merger, certain members of the Board will receive lucrative payments and other benefits that common shareholders will not and will be able to cash out a otherwise illiquid blocks of stock. Pursuant to the terms of the Merger Agreement, all Bank Mutual stock options and restricted stock awards that are outstanding will be cancelled and converted into options to purchase Associated stock or the right to receive a proportionate share of the Merger Consideration, respectively. According to the Registration Statement, the aggregate value to be received in connection with these unvested equity awards outstanding as of August 18, 2017 by Bank Mutual's executive officers (other than its named executive officers) and its non-officer directors, assuming all such awards vest at the effective time, is approximately $138,877 and $183,108, respectively. As to the named executive officers, the following table reflects the amounts that could be payable under their various arrangements if a change in control occurred as of January 31, 2018 (the assumed date of the effective time solely for purposes of the Registration Statement) and a qualifying termination of employment occurred immediately thereafter:

| Name of Executive Officer | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC[3] | Perquisites/ Benefits ($)[4] | Tax Reimbursement ($)[5] | Other[3] | Total ($)[5] |
|---|---|---|---|---|---|---|---|
| David A. Baumgarten | 1,479,640 | 226,888 | — | — | — | — | 1,706,528 |
| Michael W. Dosland | 277,529 | 99,949 | — | 15,391 | — | — | 392,869 |
| Joseph W. Fikejs | 277,498 | 127,222 | — | 6,609 | — | — | 411,329 |
| Christopher L. Mayne | 273,530 | 94,441 | — | 17,049 | — | — | 385,020 |
| Greg A. Larson | 270,133 | 93,789 | — | 11,882 | — | — | 375,804 |
| Patrick W. Lawton | 243,884 | 111,999 | — | 1,243 | — | — | 357,126 |

53. What is more, although Mr. Baumgarten's employment will end upon the effectiveness of the Proposed Merger, Associated has agreed to retain Mr. Baumgarten as a consultant until December 31, 2018 in exchange for an additional payment of $350,000 (payable in equal monthly installments) as a "consultant." Notably, in order to ensure that Mr. Baumgarten both receives his golden parachute compensation and this additional consulting compensation, Mr. Baumgarten's services during each month of the consulting period will not exceed 20% of the average level of his services as an employee of Bank Mutual over the 36-month period prior thereto.

54. Further, in connection with the Proposed Merger, Associated will increase the size of its Board and Mr. Crowley – who directed the negotiations of the Merger Agreement – will become a member of Associated's board.

55. Finally, to help secure these lucrative benefits, the Individual Defendants also consented to and took part in the execution of voting agreements that lock-up an as-of-yet undisclosed amount of the Company's stock in favor of the Proposed Merger. Specifically, in connection with the execution of the Merger Agreement, all of the Individual Defendants entered into voting agreements pursuant to which they have agreed to vote their shares in favor of the Proposed Merger and against certain competing transactions.

## F.   **The Merger Agreement Contains Onerous Deal Protection Devices.**

56. The Proposed Merger is also unfair because, as part of the Merger Agreement, the Board agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Merger a *fait accompli* and ensure that no successful competing offers will emerge for the Company.

57. Despite the unfair price, the Merger Agreement has a number of provisions that make it more difficult for another buyer to purchase the Company, and for the Company to seek

out competing offers. Specifically, if the Company terminates the Proposed Merger, the Merger Agreement states that the Company must pay Associated a $17,000,000 termination fee.

58.     Additionally, the Merger Agreement contains a strict no-solicitation provision, pursuant to which the Company is prohibited from soliciting competing acquisition proposals or, subject to certain exceptions regarding unsolicited proposals, engaging in discussions or providing information in connection with an alternative acquisition proposal. In addition, the Merger Agreement also requires that, under certain circumstances, the Company must include a standstill provision in any confidentiality agreement with certain potential buyers that might arise after the Merger Agreement was announced.

59.     The Merger Agreement also contains an information rights and matching rights provision that requires the Company to notify Associated of certain unsolicited competing offers, provide Associated with information regarding such offers, and negotiate in good faith with Associated regarding same.

60.     Finally, as noted above, the Individual Defendants also consented to and took part in the execution of several voting agreements by the Individual Defendants, pursuant to which they have agreed to vote their shares in favor of the Proposed Merger and against certain competing transactions.

61.     These provisions and agreements will cumulatively discourage other potential bidders from making a competing bid for the Company. Similarly, these provisions and agreements make it more difficult for the Company and individual shareholders to exercise their rights and to obtain a fair price for the Company's shares.

## G.     The Defendants Are Withholding Material Information from Stockholders

62.     Finally, it is critical that stockholders receive complete and accurate information about the Proposed Merger prior to casting a vote. To date, however, the Individual Defendants

have failed to provide Bank Mutual stockholders with such information. As set forth in more detail below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (1) the background of the Proposed Merger; (2) the data and inputs underlying the financial valuation exercises that purportedly support the so-called "fairness opinion" provided by RBCCM, Bank Mutual's financial advisor; and (3) certain financial projections regarding Bank Mutual.

1. **The Registration Statement fails to adequately describe the process that resulted in the Proposed Merger and the conflicts of interest infecting it**

63. The Registration Statement fails to fully and fairly disclose certain material information concerning the process leading to the Proposed Merger and the conflicts of interest that infected it, including (among other things):

a. The nature and circumstances surrounding the negotiation of post-close opportunities ultimately secured by certain members of the Board and Company management. The omission of this information is especially material in light of the Registration Statement's selective disclosure that during the sale process, Party 2 had "offered seats on its advisory board and was willing to discuss a potential holding company board seat[,]" and the fact that the Company had followed up to negotiate for one such board seat just days after Party 2's offer;

b. Whether the Board contemplated the creation of a special committee to conduct the sales process and the basis for not creating a special committee in charge of the sales process. Again, this is especially material given that the Company's Chairman and CEO each negotiated for, and ultimately secured for themselves, post-close opportunities with the combined company during the sale process; and

c. Whether the Confidentiality Agreements executed with Party 1, Party 2 and Associated contained standstill provisions.

64. These omissions are material because, without the omitted information, Bank Mutual's public shareholders are unable to assess whether the Board maximized stockholder value, whether other bidders may be willing to pay more for the Company, whether the Individual Defendants reasonably canvassed the market for potential acquirers of Bank Mutual, whether the Individual Defendants conducted a process that was fair, and the conflicts infecting the process that was conducted.

2. **The Registration Statement fails to adequately describe and summarize the financial analyses that underlie RBCCM's fairness opinion**

65. In addition to the above, the Registration Statement also omits several important details concerning the financial analyses undertaken by RBCCM in support of its respective fairness opinions.

66. For example, in connection with RBCCM's *Public Company Analysis* and *Selected Transactions Analysis* of Bank Mutual, the Registration Statement fails to disclose the individual multiples for each company and transaction that were utilized in the analyses. Without such information, Bank Mutual's stockholders are unable to determine how the multiples used in determining Bank Mutual's value compare to the selected companies or transactions. As a result, stockholders are unable to assess whether RBCCM used unreasonably low multiples, thereby rendering the implied share price ranges set forth in the analyses misleading. Similarly, in connection with RBCCM's *Public Company Analysis* and *Selected Transactions Analysis* of Associated, the Registration Statement likewise fails to disclose the individual multiples for each company and transaction that were utilized in the analyses. Again, without such information, Bank Mutual's stockholders are unable to determine how the multiples used in determining Associated's value compare to the selected companies or transactions. As a result, stockholders are unable to assess RBCCM's analysis.

67. In connection with RBCCM's *Dividend Discount Analysis* ("DDA") of Bank

Mutual, the Registration Statement fails to disclose:

    a.  The after-tax free cash flow projections provided by Bank Mutual management and used by RBCCM in the analysis;

    b.  The rationale for applying discount rates of 10.0% to 13.0 %; and

    c.  In determining terminal value, the terminal year value for each of the management projections and analyst estimates.

68.    Similarly, in connection with RBCCM's *Dividend Discount Analysis* ("DDA") of Associated, the Registration Statement fails to disclose:

    a.  The after-tax free cash flow projections used by RBCCM in the analysis;

    b.  The rationale for applying discount rates of 10.0% to 13.0 %; and

    c.  In determining terminal value, the terminal year value for each of the management projections and analyst estimates.

69.    These omissions are material because, without this information, Bank Mutual's public stockholders are unable to fully understand or recreate these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote.

**3.    The Registration Statement omits key information regarding the Company's financial forecasts**

70.    The Registration Statement also fails to disclose material information regarding both Bank Mutual's and Associated's financial forecasts, which were prepared by their respective management and provided to RBCCM and which were relied on by RBCCM for its financial analyses and in the preparation of its valuation methodologies.

71.    Specifically, the Registration Statement states that, in connection with its fairness opinion, Bank Mutual provided RBCCM with:

an estimated EPS (prior to anticipated cost savings) of $0.21 for the six months ending December 31, 2017, $0.42 for the year ending December 31, 2018 and $0.51 for year ending December 31, 2019. RBCCM then used an assumed annual

EPS growth rate of 5% for calendar years 2020 through 2022 at the direction of Bank Mutual management. In addition, Bank Mutual management provided RBCCM with estimates of total assets of $2.7 billion at June 30, 2017, $2.8 billion at December 31, 2017, $2.9 billion at December 31, 2018 and $3.1 billion at December 31, 2019. RBCCM then estimated the amount of Bank Mutual's total assets as of December 31, 2020 through 2022 using an assumed year-over-year annual growth rate of 5% at the direction of Bank Mutual management.

Registration Statement, 58.The Registration Statement fails to describe, however, when these projections were created, whether the projections were updated and/or revised prior to the Board's approval of the Merger Agreement, and (if so) whether any updated and/or revised projections were presented or otherwise discussed with the Board. This information is material and relevant to shareholders' ability to weigh the reliability of those projections and the RBCCM fairness opinion especially in view of the fact that conflicted management was involved in both the preparation of these projections and negotiations with Associated.

72. What is more, as noted above, although RBCCM performed a DDA to estimate the present value of the Company's standalone, after-tax free cash flows that the Company was projected to generate through the calendar year 2021, **the Registration Statement entirely fails to disclose a line item for free cash flows or its constituent inputs**. Moreover, the DDA was performed only through the year 2021, yet the projections provided to RBCCM were through the year 2022.

73. In sum, then, the Registration Statement fails to (and must) disclose: (i) any projected free cash flows; (ii) the manner, inputs, and normalizations (if any) to determine free cash flow; (iii) the impact, if any, of the Company's projected utilization of net operating losses; and (iv) the actual forecasts for the years 2017, 2018, 2019, 2020, 2021, and 2022.[1] The above information must be disclosed prior the shareholder vote on the Proposed Merger. Shareholders

---

[1] The Registration Statement discloses that these years were calculated using an assumed annual EPS growth rate, but does not actually disclose the projections.

are entitled to a fair summary of free cash flows and/or the manner in which after-tax free cash flows were determined in order for them to gauge the weight and importance of Bank Mutual forecasts and RBCCM's analysis.

74. Similarly, and as again noted above, although RBCCM performed a DDA to estimate the present value of Associated standalone, after-tax free cash flows that Associated was projected to generate through the calendar year 2021, **the Registration Statement entirely fails to disclose any projections for Associated.** And, again, while the DDA was performed only through the year 2021, the projections provided to RBCCM were through the year 2022.

75. Finally, although the consideration being offered to Bank Mutual stockholders is entirely the stock of Associated, the Registration Statement fails to provide any *pro forma* projections for the combined company, such that stockholders are unable to gauge the true value of the consideration they are being offered or the alleged synergies to be reaped.

76. These omissions are material because, without this information, Bank Mutual's public stockholders are unable to fully understand or recreate RBCCM's analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote.

77. In the light of the conflicts of interest of Bank Mutual's directors and executive officers in the Proposed Merger and the concerns that the current price undervalues the Company, it is necessary that the Board provide detailed information to stockholders regarding the process and the negotiations that led to the Merger Agreement and the financial analyses relied on by the Board.

## FIRST CAUSE OF ACTION

### (Against the Individual Defendants for Breach of Fiduciary Duties)

78. Plaintiff repeats and realleges each allegation set forth herein.

79. The Individual Defendants have violated fiduciary duties owed to the public shareholders of Bank Mutual.

80. By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to obtain for the public shareholders of Bank Mutual the highest value available for Bank Mutual in the marketplace.

81. As alleged herein, the Individual Defendants have initiated a process to sell Bank Mutual that undervalues the Company, vests them with benefits that are not shared equally by Bank Mutual's public shareholders, and places their interests above the interests of non-insider shareholders. In addition, by agreeing to the Proposed Merger, the Individual Defendants have capped the price of Bank Mutual stock at a price that does not adequately reflect the Company's true value. Moreover, Defendants failed to sufficiently inform themselves of Bank Mutual's value, or disregarded the true value of the Company, in an effort to benefit themselves. Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to the Proposed Merger. Finally, Defendants have failed to provide Bank Mutual's public shareholders with all material information necessary to decide how to vote their shares in connection with the Proposed Merger.

82. As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive the highest available value for their equity interest in Bank Mutual. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

83. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury, which the Individual Defendants' actions

threaten to inflict.

**SECOND CAUSE OF ACTION**

(**Against Bank Mutual and Associatedfor Aiding and Abetting**)

84. Plaintiff repeats and realleges each allegation set forth herein.

85. Bank Mutual and Associated have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to the public shareholders of Bank Mutual, and have participated in such breaches of fiduciary duties.

86. Bank Mutual and Associated knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein. In so doing, they rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Merger in breach of their fiduciary duties.

87. Plaintiff and the members of the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as the Class representative;

B. Enjoining the Proposed Merger, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best available terms for shareholders;

C. Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Individual Defendants to account to Plaintiff and the Class for all

damages suffered as a result of the wrongdoing;

       E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

       F.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: August 30, 2017

                                       **ADEMI & O'REILLY, LLP**

                                       By: _Electronically signed by John D. Blythin_

                                       Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
John D. Blythin (SBN:1046105)
Mark A. Eldridge (SBN: 1089944)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: 866-264-3995
Fax: 414-482-8001

                                       *Counsel for Plaintiff*

**Of Counsel:**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina (to seek *Pro Hac Vice* admission)
michael.palestina@ksfcounsel.com
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for Plaintiff*

**EXHIBIT 4**

**EXHIBIT 4**



FILED
09-06-2017
John Barrett
Clerk of Circuit Court
2017CV006201

**STATE OF WISCONSIN**   **CIRCUIT COURT**   **MILWAUKEE COUNTY**
**CIVIL DIVISION**

RUSSELL SCHUMEL, et al.,
Individually and On Behalf of All Others
Similarly Situated,

          Plaintiffs,

    v.

BANK MUTUAL CORPORATION, et al.,

          Defendants.

Case No.  2017-CV-6201

Case Code: 30106

<u>CLASS ACTION</u>

Hon. Glenn H. Yamahiro
Branch 34

---

THOMAS L. PAQUIN, et al.,
Individually and On Behalf of All Others
Similarly Situated,

          Plaintiffs,

    v.

BANK MUTUAL CORPORATION, et al.,

          Defendants.

Case No. 2017-CV-6202

Case Code 30106

<u>CLASS ACTION</u>

Hon. Timothy Witkowiak
Branch 22

---

FRED WOLLENBURG, et al.,
Individually and On Behalf of All Others
Similarly Situated,

        Plaintiffs,

  v.

BANK MUTUAL CORPORATION, et al.,

          Defendants.

Case No. 2017-CV-7312

Case Code 30106

CLASS ACTION

Hon. Glenn H. Yamahiro
Branch 34

---

**STIPULATION TO CONSOLIDATE RELATED CASES [CORRECTED, RE-FILED]**

---

**WHEREAS**, Plaintiffs Russell Schumel, Alex James Kowalski and Holly Kay Kowalski filed a Class Action Complaint, Case No. 2017-CV-6201 (the "Schumel Action"), in connection with the proposed acquisition of Bank Mutual Corporation ("Bank Mutual") by Associated Banc-Corp ("Associated"), on July 27, 2017.

**WHEREAS**, Plaintiffs Thomas L. Paquin, Todd Bestul and David Birkholz filed a Class Action Complaint, Case No. 2017-CV-6202 (the "Paquin Action"), in connection with the proposed acquisition of Bank Mutual by Associated, on July 27, 2017.

**WHEREAS**, Plaintiff Fred Wollenburg filed a Class Action Complaint, Case No. 2017-CV-7312 (the "Wollenburg Action"), in connection with the proposed acquisition of Bank Mutual by Associated, on August 30, 2017.

**WHEREAS,** Plaintiffs and Defendants Bank Mutual, Michael T. Crowley, Jr., David A. Baumgarten, Richard A. Brown, Mark C. Herr, Mike I. Shafir, David C. Boerke, Lisa A. Mauer, Robert B. Olson, Thomas H. Buestrin, William J. Mielke and Associated Banc-Corp, (collectively, "Defendants") all agree that the above-captioned cases involve the same subject matter, and that the administration of justice would best be served by consolidating the actions.

**IT IS HEREBY STIPULATED AND AGREED** between counsel for Plaintiffs and Defendants as follows:

1.     The following actions should be consolidated for all purposes:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Russell Schumel v. Bank Mutual Corp., et al.* | 17-CV-6201 | July 27, 2017 |
| *Thomas Paquin v. Bank Mutual Corp., et al.* | 17-CV-6202 | July 27, 2017 |
| *Fred Wollenburg v. Bank Mutual Corp., et. al.* | 17-CV-7312 | August 30, 2017 |

2.     Papers should only be filed in Case No. 17-CV-6201.

3.      All documents previously filed to date in any of the cases consolidated herein are deemed a part of the record in the consolidated action.  The complaint filed on August 30, 2017 in *Fred Wollenburg v. Bank Mutual Corp., et al.* is hereby designated as the operative complaint in the consolidated action and only the allegations, claims, and Defendants that are included in that case will be before the Court.

4.      The parties agree to alert each other and the court to any subsequently filed cases arising out of substantially the same facts or transactions and to seek consolidation of such cases with these consolidated cases.

5.      Defendants accept service of the operative complaint as defined in Paragraph 3 above, as of the date this stipulation is filed with the court.

6.      Defendants need not answer or otherwise move in response to any of the complaints, including the current operative complaint, or any amendments thereto, until such time as agreed by the parties after the conclusion of any preliminary proceedings and the closing of the proposed acquisition.

Dated this 5th day of September, 2017

**ADEMI & O'REILLY, LLP**

By *Electronically signed by John D. Blythin*
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
John D. Blythin (SBN: 1046105)
Mark A. Eldridge (SBN: 1089944)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Telephone:  (414) 482-8000
Facsimile: (414) 482-8001

**MONTEVERDE & ASSOCIATES, LLP**

Juan Monteverde (*to file pro hac vice*)
Miles Schreiner (*to file pro hac vice*)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880

*Attorneys for Plaintiffs*

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina
Christopher Tillotson
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Attorneys for Plaintiffs*

**QUARLES & BRADY LLP**
By *Electronically signed by Donald K. Schott*
Donald K. Schott
Kenneth V. Hallett
33 East Main Street, Suite 900
Madison, WI 53703
Telephone: (608) 283-2426
Fax: (608) 251-9166

*Attorneys for Bank Mutual Corporation and the Individual Defendants*

**GODFREY & KAHN**
By *Electronically signed by Howard Pollack*
Howard Pollack
833 East Michigan Street
Suite 1800
Milwaukee, WI  53202-5615
Telephone: (414) 273-3500
Fax: (414) 273-5198

*Attorneys for Associated Banc-Corp*